1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 06, 2018

SEAN F. McAVOY, CLERK

3

4

5

# UNITED STATES DISTRICT COURT

6

## EASTERN DISTRICT OF WASHINGTON

7

| | |
|---|---|
| MICHAEL JAMES BAGLEY, | No. 2:16-cv-00389-FVS |
| Plaintiff, | REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 14, 15 |

8

9

10

11

12

13

     BEFORE THE COURT are the parties' cross-motions for summary

14

judgment.  ECF Nos. 14, 15.  This matter has been referred to the undersigned

15

magistrate judge for issuance of a report and recommendation.  ECF No. 17.  The

16

Court, having reviewed the administrative record and the parties' briefing, is fully

17

informed.  For the reasons discussed below, the Court denies Plaintiff's motion

18

(ECF No. 14) and grants Defendant's motion (ECF No. 15).

19

20

REPORT AND RECOMMENDATION - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

REPORT AND RECOMMENDATION - 2

1   ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless

2   "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

3   *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

4   decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

5   *Sanders*, 556 U.S. 396, 409-10 (2009).

6                    **FIVE-STEP EVALUATION PROCESS**

7          A claimant must satisfy two conditions to be considered "disabled" within

8   the meaning of the Social Security Act.  First, the claimant must be "unable to

9   engage in any substantial gainful activity by reason of any medically determinable

10  physical or mental impairment which can be expected to result in death or which

11  has lasted or can be expected to last for a continuous period of not less than twelve

12  months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be

13  "of such severity that he is not only unable to do his previous work[,] but cannot,

14  considering his age, education, and work experience, engage in any other kind of

15  substantial gainful work which exists in the national economy."  42 U.S.C. §

16  423(d)(2)(A).

17         The Commissioner has established a five-step sequential analysis to

18  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

19  404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's

20  work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in

REPORT AND RECOMMENDATION - 3

"substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

REPORT AND RECOMMENDATION - 4

1   activities on a sustained basis despite his limitations, 20 C.F.R. § 404.1545(a)(1), is

2   relevant to both the fourth and fifth steps of the analysis.

3        At step four, the Commissioner considers whether, in view of the claimant's

4   RFC, the claimant is capable of performing work that he has performed in the past

5   (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of

6   performing past relevant work, the Commissioner must find that the claimant is not

7   disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing such

8   work, the analysis proceeds to step five.

9        At step five, the Commissioner considers whether, in view of the claimant's

10  RFC, the claimant is capable of performing other work in the national economy.

11  20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner

12  must also consider vocational factors such as the claimant's age, education and

13  past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of

14  adjusting to other work, the Commissioner must find that the claimant is not

15  disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to

16  other work, analysis concludes with a finding that the claimant is disabled and is

17  therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

18       The claimant bears the burden of proof at steps one through four above.

19  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

20  step five, the burden shifts to the Commissioner to establish that (1) the claimant is

REPORT AND RECOMMENDATION - 5

1  capable of performing other work; and (2) such work "exists in significant

2  numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*,

3  700 F.3d 386, 389 (9th Cir. 2012).

4  **ALJ'S FINDINGS**

5  Plaintiff applied for disability insurance benefits on August 28, 2012,

6  alleging an onset date of June 30, 2007.  Tr. 194-201.  Benefits were denied

7  initially, Tr. 140-42, and upon reconsideration.  Tr. 147-48.  Plaintiff appeared for

8  a hearing before an administrative law judge (ALJ) on April 28, 2015.  Tr. 42-97.

9  On May 15, 2015, the ALJ denied Plaintiff's claim.  Tr. 17-37.

10  At step one, the ALJ found Plaintiff did not engage in substantial gainful

11  activity during the period from his alleged onset date of June 30, 2007 through his

12  date last insured of June 30, 2013.  Tr. 27.  At step two, the ALJ found that through

13  the date last insured, Plaintiff had the following severe impairments: disorders of

14  the back – discogenic and degenerative, osteoarthritis right shoulder, posttraumatic

15  stress disorder, anxiety, and depression.  Tr. 27.  At step three, the ALJ found that

16  through the date last insured, Plaintiff did not have an impairment or combination

17  of impairments that met or medically equaled the severity of a listed impairment.

18  Tr. 28.  The ALJ then concluded that through the date last insured, Plaintiff had the

19  RFC

20
> to perform a full range of light work as defined in 20 CFR 404.1567(b),
> except he could only frequently push/pull on the right; could only frequently

REPORT AND RECOMMENDATION - 6

overhead reach bilaterally; could not climb ladders, ropes, and scaffolds; could only frequently stoop, kneel, crouch, and crawl; could not have concentrated exposure to extreme cold, extreme heat, vibration, or hazards such as unprotected heights and moving mechanical parts; was limited to simple routine tasks with a reasoning level of three or less and well-learned detailed tasks; could not perform at a production rate pace; could not work with the public, and could have no more than superficial contact with coworkers an supervisors.

Tr. 30.  At step four, the ALJ found that through the date last insured, Plaintiff was unable to perform any past relevant work.  Tr. 32.  At step five, the ALJ found that through the date last insured, considering Plaintiff's age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that the Plaintiff could have performed, including: housekeeper/cleaner, marker pricer, and agricultural produce sorter.  Tr. 33.  The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, at any time from June 30, 2007, the alleged onset date, through June 30, 2013, the date last insured.  Tr. 33.

On September 14, 2016, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act.  ECF No. 14.  Plaintiff raises the following issues for this Court's review:

REPORT AND RECOMMENDATION - 7

1.  Whether the ALJ properly weighed Plaintiff's symptom claims;

2.  Whether the ALJ properly weighed the medical opinion evidence; and

3.  Whether the ALJ properly considered the lay witness testimony.

ECF No. 14 at 9-19.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for improperly discrediting his symptom claims. ECF No. 14 at 9-14.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

REPORT AND RECOMMENDATION - 8

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted). "General findings are insufficient; rather, the

ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

must make a credibility determination with findings sufficiently specific to permit

the court to conclude that the ALJ did not arbitrarily discredit claimant's

testimony."). "The clear and convincing [evidence] standard is the most

demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r Soc. Sec. Admin.*, 278 F.3d 920,

924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ provided specific, clear, and convincing reasons for finding that Plaintiff's allegations of disability "only partially credible." Tr. 27.

REPORT AND RECOMMENDATION - 9

*1. Ability to Work*

First, the ALJ noted that Plaintiff continued working "up to 2012, earning as much as $3,000 in 2008;" and found that "[a]lthough his earnings were recorded as less than the amount the Social Security Administration presumes is substantial gainful activity, these earnings suggest a greater ability to perform work-related activities than the claimant alleged." Tr. 22 (citing Tr. 206). Generally, the ability to work can be considered in assessing credibility. *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1227 (9th Cir. 2009); *see also* 20 C.F.R. § 404.1571 (employment "during any period" of claimed disability may be probative of a claimant's ability to work at the substantial gainful activity level). However, as noted by Plaintiff, "occasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability." ECF No. 14 at 12 (citing *Lester*, 81 F.3d at 833); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) ("It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed,* that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment."). Plaintiff testified that he "had a [stringed instrument] repair shop" from 2007 through 2012; but it "tanked" and he was not able to do it "at anything approaching full-time hours" because of his physical and psychological limitations. Tr. 71-72. This testimony is consistent with Plaintiff's

REPORT AND RECOMMENDATION - 10

earning record of $1,055 in 2007; $3000 in 2008; $1,365 in 2009; $1,005 in 2010; $1,704 in 2011; $1,173 in 2012; and no earnings in 2013.  Tr. 206.

These minimal earnings do not support a finding that Plaintiff could successfully sustain work activity on a regular and continuing basis.  *See* Social Security Regulation ("SSR") 96-8p (July 2, 1996), *available at* 1996 WL 374184 at *1 (a "regular and continuing basis" means "8 hours a day, for 5 days a week, or an equivalent work schedule").  Moreover, in making this finding, the ALJ does not sufficiently identify what testimony is not credible, and how the cited earning records undermine those specific complaints.  *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  For these reasons, the ALJ erred to the extent that he relied on Plaintiff's ability to work, based solely on his earnings record, as a reason to discount his subjective claims.  However, this error is harmless because, as discussed below, the ALJ's ultimate credibility finding was supported by substantial evidence.  *See Carmickle*, 533 F.3d at 1162-63.

### 2.  *Daily Activities*

Second, the ALJ found Plaintiff's activities of daily living "belie [his] allegations of total disability."  Tr. 22-23.  Evidence about daily activities is properly considered in making a credibility determination.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  However, a claimant need not be utterly incapacitated in order to be eligible for benefits.  *See Orn v. Astrue*, 495 F.3d 625,

REPORT AND RECOMMENDATION - 11

639 (9th Cir. 2007) ("the mere fact that a plaintiff has carried on certain activities…does not in any way detract from her credibility as to her overall disability.").  Regardless, as in this case, "[e]ven where [Plaintiff's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1113.  Here, Plaintiff testified that he can walk for 20 minutes a day but his hips hurt after; he cannot stand for "very long;" he tries not to bend over or pick things up because it hurts; can sit for 50 minutes at a time; he can lift and carry up to twelve pounds; he has anxiety and depression; and he cannot concentrate.  Tr. 79-83.  As noted by the ALJ, Plaintiff also reported in April 2013 that he had chronic pain in his back, neck, hips, and head; numb hands; problems with confusion; difficulty handling stress and change; and limited ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb, remember, complete tasks, concentrate, understand, follow directions, use his hands, and get along with others.  Tr. 249-56.  However, the ALJ cited a range of activities that "belie [Plaintiff's] allegations of total disability," including: caring for his hair and shaving; getting around by walking and driving a car, shopping for groceries, paying bills and handling money, attending church, going to a weekly "men's group;" and riding his motorcycle.  Tr. 22-23, 250, 252-53, 484.  Moreover, the ALJ found that Plaintiff's activities of daily living "included

REPORT AND RECOMMENDATION - 12

1 continuing efforts to do guitar repair from home, which is skilled, medium work

2 that is much more demanding than [the assessed RFC], albeit on a part-time basis,

3 [which] suggest a level of functioning that is not disabling."  Tr. 27, 71-72, 485,

4 508 (noting Plaintiff "has been able to handle the work requests without difficulty"

5 and wants to open his own shop).  The ALJ additionally noted that in early 2008

6 Plaintiff's treating physician indicated that his PTSD was "not interfering with life

7 activities."  Tr. 24, 505.

8          Plaintiff generally argues the ALJ does not identify how Plaintiff's "claimed

9 activities of shopping for groceries (which was done with supervision), paying bills

10 and handling family accounts (which [Plaintiff's wife] disputes), attending church

11 and a men's group are inconsistent with his claimed limitations and disabilities."

12 ECF No. 14 at 12.  Plaintiff is correct that "[g]eneral findings are insufficient;

13 rather, the ALJ must identify what testimony is not credible and what evidence

14 undermines the claimant's complaints."  *Id.* (citing *Lester*, 81 F.3d at 834).

15 However, in this case, the ALJ extensively recounts Plaintiff's reports of disabling

16 physical limitations; and then cites his activities, as detailed above, that contradict

17 Plaintiff's allegations of incapacitating physical and psychological symptoms.  Tr.

18 22-23, 27.  Moreover, the ALJ specifically found that Plaintiff's "ability to perform

19 social and financial activities such as shopping and attending church is inconsistent

20 with his allegations about the severity of his psychiatric disorders."  Tr. 23.  And

REPORT AND RECOMMENDATION - 13

finally, the ALJ noted "in particular, [that Plaintiff's] ability to care for his hair and

to shave contradicts his allegations about the severity of symptoms in his neck and

upper extremity."  Tr. 23.  Plaintiff contends that the ALJ improperly relied on an

"inconsistency in [Plaintiff's] claim that he had some trouble dressing and bathing,

when he stated that he did not have trouble with hair care or shaving."  ECF No. 14

at 13.  However, a plain reading of the decision indicates that while the ALJ noted

that Plaintiff reported "some problems dressing and bathing but not for caring for

his hair and shaving," the ALJ did not cite an inconsistency between these reports

as a reason to discount Plaintiff's subjective claims.  Tr. 22.  Rather, the ALJ

specifically found that Plaintiff's ability to shave and care for his hair was

inconsistent with the severity of claimed limitations in his neck and upper

extremity.  Tr. 23.  Moreover, even if the evidence of Plaintiff's daily activities in

this case may be interpreted more favorably to the Plaintiff, it is susceptible to

more than one rational interpretation, and therefore the ALJ's conclusion must be

upheld.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also Andrews v.*

*Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) ("[t]he ALJ is responsible for

determining credibility").  Thus, Plaintiff's activities of daily living were

reasonably considered by the ALJ as "suggest[ing] a level of functioning that is not

disabling."  Tr. 27.  This was a clear and convincing reason to find Plaintiff only

partially credible.

REPORT AND RECOMMENDATION - 14

1

### 3.  Lack of Objective Medical Evidence

2      Third, the ALJ found Plaintiff's "overall treatment history and the objective

3 medical evidence fail to fully support [Plaintiff's] allegations."  Tr. 23-27.  An ALJ

4 may not discredit a claimant's pain testimony and deny benefits solely because the

5 degree of pain alleged is not supported by objective medical evidence.  *Rollins v.*

6 *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341,

7 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601.  However, the medical evidence is a

8 relevant factor in determining the severity of a claimant's pain and its disabling

9 effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).  Minimal objective

10 evidence is a factor which may be relied upon in discrediting a claimant's

11 testimony, although it may not be the only factor.  *See Burch*, 400 F.3d at 680.

12      As an initial matter, Plaintiff argues "[b]ecause the ALJ's other grounds

13 upon which the credibility determination is based is flawed, this reason cannot

14 stand alone."  ECF No. 14 at 11.  However, as discussed above, this reason does

15 not "stand alone" because the Court finds an additional reason offered by the ALJ

16 to find Plaintiff partially credible is clear, convincing and supported by substantial

17 evidence.  Moreover, the ALJ set out, in detail, the medical evidence contradicting

18 Plaintiff's claims of disabling mental and physical limitations; and ultimately

19 concluded that his "treatment history and the objective medical evidence fail to

20

1  support his allegations."[1]  Tr. 22-27.  For example, at the time of his motorcycle

2  accident in June 2007, Plaintiff described right shoulder discomfort; but the x-ray

3  of his right shoulder was negative, he had normal range of motion with no

4  ───────────────────

5  [1] Plaintiff argues "*[t]o the extent* that the ALJ found that [Plaintiff] was not seeking

6  sufficient mental health treatment, Dr. Campbell's notes reflect that [Plaintiff]

7  owed $3,000 for treatment and [Plaintiff] stated that he quit attending due to

8  financial concerns."  ECF No. 14 at 11 (citing Tr. 59, 450) (emphasis added).

9  Plaintiff appears to acknowledge that the ALJ may not have relied on failure to

10  seek treatment as a reason to discount his subjective testimony; and, after

11  reviewing the decision, the Court indeed finds this reason was not specifically

12  offered by the ALJ to support the adverse credibility finding.  Rather, Plaintiff's

13  "overall treatment history" is cited by the ALJ together with the "objective medical

14  evidence" as "failing to fully support Plaintiff's allegations."  Tr. 23-27; *see Burch*,

15  400 F.3d at 680 (minimal objective evidence is a factor which may be relied upon

16  in discrediting a claimant's testimony).  Moreover, even assuming that the ALJ

17  erred in considering Plaintiff's treatment history, or the justification for an alleged

18  lack of treatment; any error would be harmless because the ALJ's ultimate

19  credibility finding was supported by substantial evidence.  *See Carmickle*, 533

20  F.3d at 1162-63.

REPORT AND RECOMMENDATION - 16

1  tenderness, and he denied numbness or weakness.  Tr. 23 (citing Tr. 285-88).  In

2  November 2007, Plaintiff had full range of motion in his shoulder, with reported

3  discomfort, and no pain over his spinous process; but he was diagnosed with right

4  shoulder impingement and rotator cuff tendonitis/bursitis, right elbow mild cubital

5  tunnel syndrome, thoracic outlet syndrome, and right upper extremity radicular

6  symptoms.  Tr. 24 (citing Tr. 338-39).  MRI results from December 2007 revealed

7  multilevel cervical spondylosis with mild to moderate central spinal stenosis; and

8  signs of either mild intrasubstance tear or tendinosis of the supraspinatus tendon

9  and mild AC arthropathy.  Tr. 24 (citing Tr. 333-34).  In December 2009, Plaintiff

10  underwent arthrososcopic surgical procedures for the shoulder.  Tr. 26 (citing Tr.

11  395-96).  However, as noted by the ALJ, while "claimant received significant

12  treatment for his shoulder injury up to the time he underwent arthroscopic surgery

13  in December 2009 …, after the surgery, he did not receive much treatment."  Tr.

14  26-27.  Plaintiff complained of back pain in February 2010, but was only mildly

15  tender and had preserved range of motion, symmetrical motor strength, and normal

16  gait; and in August 2010 Plaintiff told a treating provider that his osteoarthralgias

17  of low back and shoulder were stable.  Tr. 26, 410, 413-16.

18       Similarly, the ALJ found the "specific objective findings" for Plaintiff's

19  mental impairments were "not particularly impressive and not supportive of his

20  allegations."  Tr. 27.  For example, the ALJ noted that Plaintiff saw Dr. Brian

REPORT AND RECOMMENDATION - 17

Campbell on a monthly basis in 2007 and 2008, to address his alleged anxiety and PTSD after his motorcycle accident in June 2007. Tr. 23-25. In 2007, Dr. Campbell consistently noted that Plaintiff appeared anxious with a mildly restricted affect; but his speech was normal, his thoughts were goal-oriented and logical, memory was intact, attention and concentration appeared unimpaired, and his gait was normal. Tr. 23-24, 511-12, 518, 521, 526, 528-29, 532, 535, 538, 540-41. In January 2008, Dr. Campbell noted Plaintiff's mood was generally euthymic, his affect was wide ranging, his mood was within normal limits, and his PTSD did not interfere with his life activities. Tr. 24-25, 505-06, 508-09. In October 2008, as noted by the ALJ, Plaintiff "underwent a thorough neuropsychological assessment that included multiple tests. The results of the cognitive assessment revealed a generally intact neurocognitive performance with only subtle deficits in executive function, fine motor control, verbal learning, and memory." Tr. 25, 459-83. In January 2009, Plaintiff told Dr. Campbell he knew he was "gradually getting better but still had problems with focus and the heightened startle response;" and he was observed to be mildly anxious with mildly restricted affect but with normal attention, concentration, and memory. Tr. 25, 452-53. Then, as noted by the ALJ, Plaintiff did not undergo mental health treatment until April 2012, a gap in treatment of more than three years, at which point Dr. Campbell observed Plaintiff as dysphoric, mildly anxious with mildly restricted affect, and

REPORT AND RECOMMENDATION - 18

had some difficulty with memory and fluctuating concentration and attention. Tr. 26, 433, 442, 445-46, 448. The Court notes the record does not contain evidence of Plaintiff undergoing mental health treatment after the four visits with Dr. Campbell in April 2012.

These inconsistencies between Plaintiff's alleged physical and mental limitations, and the medical evidence, provided a permissible reason for discounting Plaintiff's credibility. *See Thomas*, 278 F.3d at 958-59 ("If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination … [t]he ALJ may consider testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which the claimant complains."); *see also Rollins*, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Plaintiff generally argues that he "continued to seek treatment and consistently complained of pain." ECF No. 14 at 10. Plaintiff also cites a single mental status examination finding that Plaintiff was irritable, mildly anxious and had mildly restricted affect, neurovegetative signs of depression were evident; and "testing" during which Plaintiff indicated moderate depression and mild anxiety.

REPORT AND RECOMMENDATION - 19

1   ECF No. 14 at 10-11 (citing Tr. 433-34).  However, regardless of evidence that

2   could be interpreted more favorably to the Plaintiff, the ALJ properly relied on

3   evidence from the overall record to support the finding that Plaintiff's claimed

4   limitations "exceed the objective medical evidence considerably."  Tr. 27.

5   "[W]here evidence is susceptible to more than one rational interpretation, it is the

6   [Commissioner's] conclusion that must be upheld."  *Burch*, 400 F.3d at 679.  For

7   all of these reasons, the lack of corroboration of Plaintiff's testimony by the

8   objective medical evidence and Plaintiff's "overall treatment history," was

9   properly considered by the ALJ.

10          The Court concludes that the ALJ supported the adverse credibility finding

11   with specific, clear and convincing reasons supported by substantial evidence.

12          **B. Medical Opinion Evidence**

13          Plaintiff faults the ALJ for failing to properly consider and weigh the

14   "general observations" and "treatment notes" of treating psychologist Dr. Brian

15   Campbell; and the medical opinions of the nonexamining physicians and testifying

16   medical experts.  ECF No. 14 at 14-17.

17          There are three types of physicians: "(1) those who treat the claimant

18   (treating physicians); (2) those who examine but do not treat the claimant

19   (examining physicians); and (3) those who neither examine nor treat the claimant

20   [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

REPORT AND RECOMMENDATION - 20

1 *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted).

2 Generally, a treating physician's opinion carries more weight than an examining

3 physician's, and an examining physician's opinion carries more weight than a

4 reviewing physician's. *Id.* at 1202. If a treating or examining physician's opinion

5 is uncontradicted, the ALJ may reject it only by offering "clear and convincing

6 reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d

7 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any

8 physician, including a treating physician, if that opinion is brief, conclusory and

9 inadequately supported by clinical findings." *See Bray,* 554 F.3d at 1228 (internal

10 quotation marks and brackets omitted). "If a treating or examining doctor's

11 opinion is contradicted by another doctor's opinion, an ALJ may only reject it by

12 providing specific and legitimate reasons that are supported by substantial

13 evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830–31).

14      *1. Dr. Brian Campbell*

15      As recounted by the ALJ, the record includes extensive treatment notes from

16 Plaintiff's treating psychologist, Dr. Campbell, Tr. 23-26, 31, who treated Plaintiff

17 on a monthly basis from the time of his motorcycle accident in mid-2007 through

18 January 2009. Tr. 452-544. As noted by the ALJ, Plaintiff did not return to Dr.

19 Campbell until April 2012; and the record does not indicate that Plaintiff received

20 further mental health treatment after April 2012. Tr. 426-49. The ALJ accorded

REPORT AND RECOMMENDATION - 21

1   Dr. Campbell's "general observations and statements in his treatment notes" great

2   weight because they "are consistent with the record as a whole and supported with

3   explanation." Tr. 31. Moreover, the ALJ found Dr. Campbell's "observations and

4   statements show that [Plaintiff's] psychological problems were never more than

5   moderate and improved to mild by October 2008;" which was consistent with the

6   testimony from the medical expert. Tr. 31.

7       Plaintiff argues that the ALJ "generally afforded Dr. Campbell's medical

8   opinions 'great weight,' but fails to acknowledge the difficulties that Dr. Campbell

9   found." ECF No. 14 at 15. In support of this argument Plaintiff cites a single

10   treatment note from April 2012 "observ[ing]" that Plaintiff "had difficulty

11   concentrating on his work and completing projects and has anxiety about his

12   projects." *Id*. (citing Tr. 427, 432). However, review of the record cited by

13   Plaintiff reveals that these were subjective complaints reported by Plaintiff to Dr.

14   Campbell, rather than objective observations. *See* Tr. 427, 432. Moreover, as

15   argued by Defendant, Plaintiff fails to establish "that the ALJ's interpretation of

16   the evidence was irrational or that the ALJ neglected to account for any established

17   limitations." ECF No. 15 at 13; *Molina*, 674 F.3d at 1111 (an error is harmless

18   "where it is inconsequential to the [ALJ's] ultimate nondisability determination").

19   Finally, the ALJ did not err in considering Dr. Campbell's "general observations"

20   and "statements," because Dr. Campbell did not assess any functional limitations.

REPORT AND RECOMMENDATION - 22

1  *See, e.g., Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010)

2  (where physician's report did not assign any specific limitations or opinions in

3  relation to an ability to work, "the ALJ did not need to provide 'clear and

4  convincing reasons' for rejecting [the] report because the ALJ did not reject any of

5  [the report's] conclusions"); *see also Kay v. Heckler*, 754 F.2d 1545, 1549 (9th Cir.

6  1985) (the "mere diagnosis of an impairment ... is not sufficient to sustain a finding

7  of disability."). For all of these reasons, the Court finds ALJ properly considered

8  and weighed Dr. Campbell's treatment notes.

9           *2. Nonexamining Opinions*

10          Plaintiff generally argues that had the opinions of state agency reviewing

11  physicians Dr. Rita Flanagan and Dr. Robert Handler, both of whom limited

12  Plaintiff to light work, "been properly considered, at a minimum [Plaintiff's RFC]

13  would be assessed differently, affecting the ultimate determination regarding

14  disability in this matter." ECF No. 14 at 16 (citing Tr. 120-21, 134-36). However,

15  Plaintiff fails to address that the ALJ "largely adopt[ed]" these opinions, "but

16  [gave] them only partial weight because of the inconsistencies in the record as a

17  whole and blend[ed] them with those of the medical experts to arrive with the

18  slightly different [RFC]." Tr. 32. First, the Court may decline to address this issue

19  because Plaintiff's opening brief does not specifically address the weight granted

20  to the reviewing opinions. *See Carmickle*, 533 F.3d at 1161 n.2. Moreover,

REPORT AND RECOMMENDATION - 23

Plaintiff cites Dr. Flanagan and Dr. Handler's findings that Plaintiff could

occasionally lift up to 20 pounds and frequently lift 10 pounds; and argues that

"had these opinions been properly considered," Plaintiff's RFC "would be assessed

differently." ECF No. 14 at 16 (citing Tr. 120-21, 134-36). However, the ALJ

found Plaintiff "could perform light work. He could lift and carry 10 pounds

frequently and 20 pounds occasionally." Tr. 30. Thus, even assuming, *arguendo*,

that the ALJ improperly considered the reviewing physicians' opinions regarding

Plaintiff's lifting ability, any error is harmless because the ALJ incorporated the

state agency physicians' opined limitations into the assessed RFC.[2] *See Stout v.*

*Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless

where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability

conclusion). To the extent Plaintiff argued as such, the Court finds no error in the

ALJ's consideration of the Dr. Flanagan and Dr. Handler's opinions.

    Finally, Plaintiff notes the ALJ granted "greatest weight" to the testifying

medical experts. ECF No. 14 at 15. Plaintiff further contends that the "ALJ based

---

[2] Plaintiff also appears to argue that had the ALJ properly considered Dr. Flanagan

and Dr. Handler's opinions, the decision would have been different at step five of

the analysis. ECF No. 14 at 17. However, as discussed above, the Court finds the

ALJ properly considered these opinions. Thus, the ALJ did not err at step five.

REPORT AND RECOMMENDATION - 24

the Unfavorable Decision upon the testimony of the doctor that testified at the hearing as a medical advisor who testified that [Plaintiff] was capable of lifting 50 pounds occasionally and 25 pounds frequently.  It is obvious that due to the seriousness of [Plaintiff's] injuries and resulting impairments that he would not be able to lift 50 pounds occasionally and 20 pounds frequently."  ECF No. 14 at 16 (citing Tr. 53).  This argument is inapposite because the ALJ did not incorporate Dr. Jahnke's testimony regarding Plaintiff's lifting capability into the assessed RFC.  Tr. 30.  Rather, the ALJ specifically found that despite assigning great weight to Dr. Lynne Jahnke's expert testimony, he "assigned a slightly more restrictive physical [RFC] than the medical expert Dr. Jahnke based on the State Disability Determination Service's evaluation and [Plaintiff's] testimony."  Tr. 32. Plaintiff fails to specifically identify or challenge the ALJ's actual finding in his briefing; thus, the Court declines to address the ALJ's consideration of Dr. Jahnke's medical expert testimony.  *See Carmickle*, 533 F.3d at 1161 n.2.

     For all of these reasons, the Court finds the ALJ properly considered Dr. Campbell's treatment notes, as well as the opinions of the nonexamining physicians and medical experts.

### C. Lay Witness Testimony

     Plaintiff contends the ALJ improperly rejected the lay witness testimony of Plaintiff's wife, Connie Bagley.  ECF No. 14 at 17-18.

REPORT AND RECOMMENDATION - 25

The Ninth Circuit has summarized the law on lay witness testimony as follows:

> Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ may take into account. We have held that competent lay witness testimony cannot be disregarded without comment and that in order to discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness.

*Molina*, 674 F.3d at 1114 (quotations and citations omitted). However, the ALJ is not required to discuss every witness's testimony on an individualized, witness-by-witness basis. *Id.* Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness. *Id.*; *see Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that because the ALJ provided clear and convincing reasons for rejecting the claimant's own subjective complaints, and because the lay witness's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting the lay witness's testimony).

As noted by the ALJ, Ms. Bagley described Plaintiff as in constant pain; had difficulty with anxiety, frustration and poor coping skills; and impaired ability to lift, bend, stand, reach, walk, sit, kneel, climb, remember, complete tasks, concentrate, follow instructions, and get along with others. Tr. 23 (citing Tr. 241-48). The ALJ found her "statements tend to support [Plaintiff's] allegations, but

REPORT AND RECOMMENDATION - 26

not sufficiently to overcome the other factors." Tr. 23. Plaintiff argues the ALJ

failed to provide germane reasons for rejecting Ms. Bagley's testimony. ECF No.

14 at 18. The Court agrees. The ALJ's vague finding that Ms. Bagley's

statements did not "sufficiently overcome other factors" was not a germane reason

to reject her opinion. However, as noted by Defendant, Ms. Bagley's "statements

describe limitations similar to those alleged by Plaintiff," including:

chronic/constant pain; difficulty with anxiety and PTSD; poor coping skills; being

frustrated and overwhelmed; and an impaired ability to lift, bend, stand, reach,

walk, sit, kneel, climb, remember, complete tasks, concentrate, follow instructions,

and get along with others. ECF No. 15 at 15; Tr. 241, 246, 249, 253-54.

Moreover, Plaintiff fails to articulate any additional limitations identified by Ms.

Bagley that the ALJ should have adopted. Accordingly, the Court finds any error

considering Mrs. Bagley's opinion was harmless because her testimony did not

describe any limitations not already described by Plaintiff; thus, the ALJ's well-

supported reasons for rejecting Plaintiff's testimony apply equally as well to Mrs.

Bagley's testimony. *See Molina*, 674 F.3d at 1117; *see also Stout*, 454 F.3d at

1055 (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's

ultimate disability conclusion).

REPORT AND RECOMMENDATION - 27

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY RECOMMENDED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 14, be DENIED.

2. Defendant's Motion for Summary Judgment, ECF No. 15, be GRANTED.

**OBJECTIONS**

Any party may object to a magistrate judge's proposed findings, recommendations or report within **fourteen (14)** days following service with a copy thereof. Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor. Any response to the objection shall be filed within **fourteen (14)** days after receipt of the objection. Attention is directed to FED. R. CIV. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject or modify the magistrate judge's determination. The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent

REPORT AND RECOMMENDATION - 28

determination thereon.  The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions.  *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMR 4, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to enter this Report and Recommendation, forward a copy to Plaintiff and counsel, and **SET A CASE MANAGEMENT DEADLINE ACCORDINGLY.**

DATED February 6, 2018.

<u>s/Mary K. Dimke</u>
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION - 29